# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ARLENE BELL-SPARROW,**<br><br>Plaintiff**,**<br><br>vs.<br><br>**SFG\*PROSCHOICEBEAUTY, ET AL.,**<br><br>Defendants**.** | CASE NO. 18-cv-06707-YGR<br><br>**ORDER RE: CITIBANK'S MOTION TO COMPEL ARBITRATION AND STAY ACTION**<br><br>Re: Dkt. No. 12 |

Plaintiff Arlene Bell-Sparrow, proceeding *pro se*, brings this action against defendants SFG\*Proschoicebeauty, MTZ\*Carenature, and Citibank, N.A. ("Citibank"). (*See* Dkt. No. 1 ("Compl.").) Plaintiff asserts the following seventeen causes of action: (1) negligent misrepresentation; (2) deceptive business practice; (3) unauthorized credit card charges; (4) unlawful, unfair, and fraudulent business practices in violation of California Business and Professions Code section 17200; (5) violation of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 17500 *et seq.*; (6) failure to disclose material terms of offer; (7) violation of the Federal Trade Commission Act, 15 U.S.C. § 45(a); (8) violation of the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. § 8404; (9) violation of ROSCA – Auto Renewal Continuity Plan; (10) violation of the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.*; (11) violation of Express Warranties Article 2 Section 2-313; (12) violation of California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*; (13) breach of the covenant of good faith and fair dealing; (14) promissory estoppel; (15) false advertising; (16) adhesion and unconscionable contract; and (17) invasion of privacy and seclusion. (*Id.* ¶¶ 41–148.)[1]

---

[1] The complaint, which is replete with group pleading, is unclear as to which causes of action pertain to which defendant. As far as the Court can discern, all causes of action except for numbers (2), (5), (8), (13), and (15)–(17) are asserted against Citibank.

Now before the Court is defendant Citibank's motion to compel arbitration and stay the instant action pursuant to 9 U.S.C. section 3. (Dkt. No. 12 ("MTC").) Having carefully considered the pleadings in this action and the papers and exhibits submitted, and for the reasons set forth below, the Court **GRANTS** Citibank's motion and **STAYS** the action *as to Citibank alone*.[2]

## I. RELEVANT BACKGROUND

Plaintiff Arlene Bell-Sparrow opened an account with Citibank in June 2017. (*See* Declaration of Christy G. Bennett ISO MTC ("Bennett Decl.") ¶ 6, Dkt. No. 12-2 at ECF pp. 1–3.) Plaintiff used her Citibank credit card to purchase facial cream from defendant MTZ*Carenature on October 30, 2017. (Compl. ¶ 3.) She alleges that her single purchase caused her to accrue an unauthorized credit card debt of $871.79. (*Id.*) After plaintiff opened her account with Citibank, she received a credit card agreement in the mail, between Citibank and plaintiff, along with her credit card. (Bennett Decl. ¶ 6; *see also* Citibank Card Agreement ("Credit Card Agreement"), Dkt. No. 12-2 at ECF pp. 5–19.) Plaintiff never signed the Credit Card Agreement, which contains a South Dakota choice-of-law provision and an arbitration provision. (Opp. at 6; Credit Card Agreement at 9–10 ("Arbitration Agreement").) In pertinent part, the Arbitration Agreement provides as follows:

> [D]isputes may be resolved by binding arbitration. Arbitration replaces the right to go to court, have a jury trial or initiate or participate in a class action. . . . You or we may arbitrate any claim, dispute or controversy between you and us arising out of or related to your Account, a previous related Account or our relationship . . . . If arbitration is chosen by any party, neither you nor we will have the right to litigate that Claim in court or have a jury trial on that Claim. . . . Individual Claims filed in a small claims court are not subject to arbitration, as long as the matter stays in small claims court. . . . The arbitrator has no authority to arbitrate any claim on a class or representative basis and may award relief only on an individual basis. . . . Arbitration shall be conducted by the American Arbitration Association ("AAA") according to this arbitration provision and the applicable AAA arbitration rules . . . . We will pay your share of the arbitration fee for an arbitration of Claims of $75,000 or less if they are unrelated to debt collection. . . . You may reject this arbitration provision by sending a written rejection notice within 45 days of Account opening.

(Arbitration Agreement at 9–10 (emphases removed).)

---

[2] The Court previously vacated the hearing set for March 12, 2019 pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b). (*See* Dkt. No. 45.)

2

On November 5, 2018, plaintiff filed the instant suit based upon diversity jurisdiction. (*See* Compl. ¶ 26.) On December 18, 2018, Citibank filed the instant motion to compel arbitration and stay the action, along with a declaration of Citibank employee Christy G. Bennett. On January 18, 2019, plaintiff filed two "objections," one to Citibank's motion, (Dkt. No. 30 ("MTC Objection")), and one to the Bennett Declaration, (Dkt. No. 31 ("Decl. Objection").) Citibank filed its reply in support of its motion on January 29, 2019. (Dkt. No. 36 ("Reply").) Despite her previously filed "objection" to the motion, plaintiff filed a separate "reply in opposition to Citibank['s] motion to compel" on February 8, 2019.[3] (Dkt. No. 38 ("Opp.").)[4]

Defendants SFG*Proschoicebeauty and MTZ*Carenature have not appeared. With respect to the former, plaintiff apparently served the incorrect company and still has not effectuated service on the proper defendant. (*See* Dkt. No. 13 at ECF p. 7 (indicating that "the entity that [plaintiff] named as a defendant in this lawsuit" is a different company than plaintiff served).) As for the latter, the proof of service indicates that "FedEx certified mailed packet to address provided [by plaintiff]" but that it was "returned as undeliverable." (*See* Dkt. No. 15.)

## II.   LEGAL STANDARD

The Federal Arbitration Act (the "FAA") requires a district court to stay judicial proceedings and compel arbitration of claims covered by a written and enforceable arbitration agreement. 9 U.S.C. § 3. A party may bring a motion in a federal district court to compel arbitration. *Id.* § 4. The FAA reflects "both a liberal federal policy favoring arbitration and the

---

[3] Plaintiff filed her "reply in opposition" without seeking leave of the Court, in violation of Civil Local Rule 7-3(d). The filing does not object to evidence submitted in Citibank's reply (indeed, there is no such evidence), or present authority that was previously unavailable to plaintiff. Rather, it presents additional legal argument in opposition to Citibank's motion to compel arbitration, which is not a proper basis for filing supplementary material without prior Court approval. *See* Civ. L.R. 7-3(d)(1). Given plaintiff's *pro se* status, and in the interest of justice, the Court has reviewed all of the arguments raised by plaintiff. However, the Court advises plaintiff to comply with the Civil Local Rules going forward.

[4] Plaintiff "objects" to the Bennett Declaration but fails to raise any evidentiary basis for her objection. Instead, plaintiff therein raises many of the same arguments against Citibank's Arbitration Agreement that she raises in her "objection" to the motion to compel and "reply in opposition." These arguments fail for the reasons discussed herein. To the extent plaintiff's arguments pertain to the merits of her underlying claims, those are not properly before the Court given the nature of the motion at hand. Thus, the Court does not address them.

3

1 fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotation marks and citations omitted). "In accordance with that policy, 'doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)). The FAA broadly provides that an arbitration clause in a contract involving a commercial transaction "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

In ruling on a motion to compel arbitration, a court's role is typically limited to determining whether: (i) an agreement exists between the parties to arbitrate; (ii) the claims at issue fall within the scope of the agreement; and (iii) the agreement is valid and enforceable. *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). However, "if there is a genuine dispute of material fact as to any of these queries, a [d]istrict [c]ourt should apply a 'standard similar to the summary judgment standard of Fed.R.Civ.P. 56.'" *Ackerberg v. Citicorp USA, Inc.*, 898 F. Supp. 2d 1172, 1175 (N.D. Cal. 2012) (quoting *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004)); *see also Starke v. SquareTrade, Inc.*, 913 F.3d 279, 281 n.1 (2d Cir. 2019) (same). Once a court is satisfied that the parties entered into an enforceable arbitration agreement covering the subject of their litigation, the Court must promptly compel arbitration. 9 U.S.C. § 4. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). Generally, if a contract contains an arbitration provision, arbitrability is presumed, and "doubts should be resolved in favor of coverage." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

"Both the arbitrability of the merits of a dispute and the question of who has the primary power to decide arbitrability depend on the agreement of the parties." *Goldman, Sachs & Co. v. Reno*, 747 F.3d 733, 738 (9th Cir. 2014) (citing *First Option of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)); *see also Oracle*, 724 F.3d at 1072. However, these questions are decided by the

4

arbitrator instead of the court where "the parties clearly and unmistakably" express that intention. *AT&T Techs.*, 475 U.S. at 649; *see also Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) ("[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.").

When a court compels arbitration, as "a matter of its discretion to control its docket," it may stay litigation among non-arbitrating parties pending the outcome of arbitrable claims or a parallel arbitration. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 20 n.23; *see also, e.g.*, *BrowserCam, Inc. v. Gomez, Inc.*, No. 08–CV–02959–WHA, 2009 WL 210513, at *3 (N.D. Cal. Jan. 27, 2009) (it is "within a district court's discretion whether to stay, 'for [c]onsiderations of economy and efficiency,' an entire action, including issues not arbitrable, pending arbitration.") (quoting *United States ex rel. Newton v. Neumann Caribbean Int'l., Ltd.*, 750 F.2d 1422, 1427 (9th Cir. 1985)).

### III. DISCUSSION

Citibank moves the Court to compel arbitration of plaintiff's claims in the instant action, pursuant to the Arbitration Agreement contained in the Credit Card Agreement. Plaintiff opposes arbitration.

As a preliminary matter, if an arbitration agreement delegates the question of arbitrability to the arbitrator, a party opposing arbitration may only challenge the delegation provision *itself* as unconscionable. *Brennan v. Opus Bank*, 796 F.3d 1125, 1128 (9th Cir. 2015). Here, Citibank's briefs are silent as to whether there is clear and unmistakable delegation of the arbitrability issue in the Arbitration Agreement. The Court deems Citibank's silence in this regard as a concession that there is not. Thus, it is for the Court to determine whether the agreement to arbitrate is enforceable and encompasses plaintiff's claims.[5]

---

[5] The Court notes that the Ninth Circuit has held that "incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan*, 796 F.3d at 1128. However, *Brennan* and subsequent cases have been careful to distinguish situations in which at least one party to the agreement is unsophisticated. *See, e.g., Ingalls v. Spotify USA, Inc.*, No. 16-cv-03533-WHA, 2016 WL 6679561, at *3 (N.D. Cal. Nov. 14, 2016) ("[E]very district court decision in our circuit to address the question since *Brennan* has held that incorporation of the AAA rules was insufficient to establish delegation in consumer contracts involving at least one unsophisticated party."). While the Arbitration

5

### A. Choice of Law

The Court's first inquiry is whether plaintiff entered into an arbitration agreement with Citibank. This inquiry necessarily requires the Court to discuss the enforceability of the Credit Card Agreement under the rubric of the applicable state's contract law. As such, the Court must decide whether South Dakota law is the applicable substantive law. Citibank contends, and plaintiff does not dispute, that South Dakota law applies based on the Credit Card Agreement's choice-of-law provision.

A forum state's substantive law applies to the choice-of-law rule determination where jurisdiction in the case is based on diversity jurisdiction. *See Ferens v. John Deere Co.*, 494 U.S. 516, 524–25 (1990); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78–79 (1938); *Muldoon v. Tropitone Furniture Co.*, 1 F.3d 964, 966 (9th Cir. 1993). Because plaintiff initiated this lawsuit in California, the Court applies California's choice-of-law rules. *See Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1002 (9th Cir. 2010). "When an agreement contains a choice of law provision, California courts apply the parties' choice of law unless the analytical approach articulated in § 187(2) of the Restatement (Second) of Conflict of Laws . . . dictates a different result." *Id.* (quoting *Hoffman v. Citibank (S.D.), N.A.*, 546 F.3d 1078, 1082 (9th Cir. 2008) (per curiam)). "Under the Restatement approach, the court must first determine 'whether the chosen state has a substantial relationship to the parties or their transaction, . . . or whether there is any other reasonable basis for the parties' choice of law.'" *Bridge Fund*, 622 F.3d at 1002 (quoting *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 466 (1992)). "If . . . either test is met, the court must next determine whether the chosen state's law is contrary to a *fundamental* policy of California." *Bridge Fund*, 622 F.3d at 1002 (quoting *Nedlloyd Lines B.v.*, 3 Cal. 4th at 466) (emphasis in original).

Here, the Credit Card Agreement contains a governing law provision stating that "[f]ederal

---

Agreement here plainly incorporates the AAA rules, there is no indication in the record that plaintiff is a sophisticated party who "clearly and unmistakably" intended to delegate jurisdiction to the arbitrator. Moreover, Citibank submits that the Court should resolve the gateway issue of unconscionability.

6

law and the law of South Dakota govern the terms and enforcement of this Agreement" because the credit on plaintiff's account extended from South Dakota. (*See* Credit Card Agreement at 10; Bennett Decl. ¶ 1.) Accordingly, the Court finds that South Dakota has a substantial relationship to this dispute, and application of South Dakota law would not be contrary to any fundamental policy of California. As such, the Court will apply South Dakota law to determine whether Citibank's contract requires plaintiff to pursue her claims against Citibank through arbitration.[6]

### B. Existence of Agreement to Arbitrate

Though not entirely clear, plaintiff appears to argue that she has a right to a jury trial because "the existence of a binding arbitration agreement is disputed." (MTC Objection at 8.) However, plaintiff does not, in fact, dispute that the Arbitration Agreement exists. Namely, she does not dispute that she received the Credit Card Agreement with Citibank or argue that the Credit Card Agreement did not contain the Arbitration Agreement at issue. (*See id.*) Plaintiff also produced no evidence to suggest that Citibank's exemplar contract is not the same agreement that Citibank mailed with her credit card and that consequently governed her account with Citibank.[7] Instead, plaintiff argues that the there was no binding arbitration agreement because she never signed the Credit Card Agreement. (Opp. at 6.)[8] However, the FAA requires only that arbitration

---

[6] This determination comports with caselaw involving similar agreements. *See, e.g.*, *Ackerberg*, 898 F. Supp. 2d at 1176–77 (finding that "South Dakota and federal law govern the parties' agreements" where Citibank designated South Dakota law to govern the parties' agreement); *Cayanan v. Citi Holdings, Inc.*, 928 F. Supp. 2d 1182, 1199–1200 (S.D. Cal. 2013) (applying South Dakota law to Citibank's arbitration agreement because "South Dakota law does not conflict with California law"); *Yaqub v. Experian Info. Sols., Inc.*, No. CV 11-2190-VBF (FFMx), 2011 WL 12646340, at *2 (C.D. Cal. June 10, 2011) (holding that Citibank's credit card agreement's "South Dakota choice-of-law provision is enforceable" because South Dakota has a "substantial relationship" to the parties and the plaintiff failed to show that South Dakota law "is contrary to any fundamental public policy of California"); *Daugherty v. Experian Info. Sols., Inc.*, 847 F. Supp. 2d 1189, 1194–95 (N.D. Cal. 2012) (same).

[7] Sample credit card agreements or exemplars of what a defendant normally gives to its customers is evidence of the written contract a plaintiff received. *See Hadlock v. Norwegian Cruise Line, Ltd.*, No. SACV 10-0187 AG (ANx), 2010 WL 1641275, at *1 (C.D. Cal. Apr. 19, 2010).

[8] Plaintiff also argues that the she is not bound by the Arbitration Agreement because the contract is "vague and ambiguous" in that it fails to specify that it represents a binding agreement. Decl. Objection at 2. However, plaintiff later concedes that Citibank's "exhibit 1 states that the arbitration terms are binding." *Id.* at 7; *see also Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1208 (9th Cir. 1998) ("No magic words such as 'arbitrate' or 'binding arbitration' or 'final dispute

7

agreements be "written"; there is no "signature" requirement. *See* 9 U.S.C. § 2; *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1369 (11th Cir. 2005) (noting that "the overwhelming weight of authority supports the view that no signature is required to meet the FAA's 'written' requirement.") (citing *Genesco, Inc. v. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1987) (finding that "while the [FAA] requires a writing, it does not require that the writing be signed by the parties")).

Under South Dakota law, plaintiff entered into the Credit Card Agreement containing the Arbitration Agreement once she used her credit card. Specifically, South Dakota's statute governing contracts between a card holder and issuer states:

> The use of an accepted credit card or the issuance of a credit card agreement and the expiration of thirty days from the date of issuance without written notice from a card holder to cancel the account creates a binding contract between the card holder and the card issuer with reference to any accepted credit card, and any charges made with the authorization of the primary card holder.

S.D. Codified Laws § 54-11-9. Plaintiff never cancelled her account with Citibank, and her account remained "open and active" as of December 17, 2018. (Bennett Decl. ¶ 7.)

### C. Validity and Enforceability of the Arbitration Agreement

Plaintiff avers that Citibank's binding Arbitration Agreement is invalid because it amounts to an unconscionable contract of adhesion and was not the result of a bargained-for exchange. (*See* Opp. at 4.)[9] Plaintiff further argues that enforcing the binding Arbitration Agreement violates

---

resolution' are needed to obtain the benefits of the [FAA].") (citation omitted). Thus, this argument fails.

[9] To the extent plaintiff argues that the Arbitration Agreement is invalid because it "waive[s] the right to seek public injunctive relief in any forum," (*see* Reply at 2), she fails to persuade. Plaintiff cites *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017) in support thereof, which held that California law prohibits as unconscionable waivers of public injunctive relief in any forum. *Id*. at 961. However, concerning such relief, *McGill* noted, "[r]elief that has the primary purpose or effect of redressing or preventing injury to an individual plaintiff—or to a group of individuals similarly situated to the plaintiff—does not constitute public injunctive relief." *Id*. at 955. To constitute public injunctive relief, the requested relief must "by and large" benefit the general public. *Wright v. Sirius XM Radio, Inc.*, No. SACV 16-01688 JVS (JCGx), 2017 WL 4676580, at *9 (C.D. Cal. June 1, 2017) (citing *McGill*, 2 Cal. 5th at 955). Merely requesting relief which would generally enjoin a defendant from wrongdoing does not elevate requests for injunctive relief to requests for *public* injunctive relief. *See id*. at *9. Here, a review of plaintiff's 81-page complaint reveals that the relief plaintiff seeks does not constitute public injunctive relief. Her vague and generalized allegations regarding the "general public," "rights of the public," and the "public interest" do not adequately request public injunctive relief. Compl. ¶¶ 77, 78(a), 148.

8

her Seventh Amendment right to a jury trial and her due process right because of the fees associated with arbitrating her claims. (*Id.* at 10–11; MTC Objection at 9.)[10] The Court addresses each of these arguments in turn.

### 1. *Unconscionability*

The party seeking to avoid arbitration bears the "burden of establishing that the arbitration clause at issue . . . is unconscionable." *Rogers v. Royal Caribbean Cruise Line*, 547 F.3d 1148, 1158 (9th Cir. 2008). South Dakota law requires a showing of *both* procedural and substantive unconscionability to render a contract unenforceable. *See Hoffman*, 546 F.3d at 1083 n.2 (citing *Nygaard v. Sioux Valley Hosps. & Health Sys.*, 731 N.W.2d 184, 195 (S.D. 2007)). In making its determination, the Court focuses on "both overly harsh or one-sided terms, i.e., substantive unconscionability; and how the contract was made (which includes whether there was a meaningful choice), i.e., procedural unconscionability." *Nygaard*, 731 N.W.2d at 194–95 (internal quotation marks omitted).

With respect to the former, a contract is generally substantively unconscionable under South Dakota law only "when the inequality of the bargain is such as to shock the conscience" of the court. *Tsiolis v. Hatterscheidt*, 187 N.W.2d 104, 106 (S.D. 1971) (citation omitted); *see also Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1075 (9th Cir. 2007) ("Substantive unconscionability . . . focuses on the terms of the agreement and whether those terms are so one-sided as to shock the conscience."). Here, plaintiff argues that the Arbitration Agreement is unconscionable because it is one-sided, provides no "opt-out clauses," and plaintiff had "no realistic opportunity to look elsewhere for a more favorable contract." (Opp. at 4–5.) However,

---

Indeed, her "Prayer for Relief" makes no mention of such relief, let alone injunctive relief of any kind. *See id.* at ¶¶ 69–70. *McGill* therefore does not prevent Citibank from requiring plaintiff to arbitrate her claims against it in this case.

[10] In addition, plaintiff argues that the Arbitration Agreement is unenforceable because it violates the Magnuson-Moss Warranty Act ("MMWA"). MTC Objection at 11–14. In general, the MMWA "creates a federal private cause of action for a warrantor's failure to comply with the terms of a written warranty[.]" *Milicevic v. Fletcher Jones Imports, Ltd.*, 402 F.3d 912, 917 (9th Cir. 2005) (citing 15 U.S.C. § 2310(d)(1)(B)). The MMWA does not apply here because plaintiff's claims against Citibank are based on unauthorized credit card charges and do not implicate any warranty claim covered by the MMWA.

9

she fails to establish that the Arbitration Agreement contains "overly harsh or one-sided terms" which "*shock the conscience*" and therefore has not met her burden for establishing substantive unconscionability. Her bald assertion that the Arbitration Agreement is "unconscious" does not suffice. (*Id.* at 5.)

As for procedural unconscionability, plaintiff argues that the binding Arbitration Agreement represents an unconscionable contract of adhesion. (*See id.*) As an initial matter, contracts of adhesion are not per se procedurally unconscionable under South Dakota law. *See Rozenboom v. Nw. Bell Tel. Co.*, 358 N.W.2d 241, 245 (S.D. 1984) ("We do not suggest that simply because this contract is standardized and preprinted, ipso facto, it is unenforceable as a contract of adhesion."); *see also Concepcion*, 563 U.S. at 346–47 (acknowledging that "the times in which consumer contracts were anything other than adhesive are long past").[11] Here, plaintiff does not argue that Citibank coerced her into accepting the contract. Instead, she argues that Citibank should have provided "'opt-out clauses' that g[a]ve plaintiff the right to reject arbitration within a certain time frame." (Opp. at 4.) Citibank did precisely that.

The Arbitration Agreement expressly states that plaintiff "may reject this arbitration provision by sending a written rejection . . . within 45 days of Account opening." (Arbitration Agreement at 10.) Accordingly, plaintiff had a sufficiently "meaningful choice" in creating the contract with Citibank and assented to its terms when she failed to opt out. *See Baldwin v. Nat'l*

---

[11] Plaintiff's reliance on *Graham v. Scissor-Tail, Inc.*, 28 Cal. 3d 807 (1981) to argue that the Arbitration Agreement is unconscionable is unavailing. *See* Opp. at 7–8. In *Graham*, the California Supreme Court found that form contracts were unconscionable because the contracts' arbitration provision "designate[d] an arbitrator who, by reason of its status and identity, [was] presumptively biased in favor of one party." *Graham*, 28 Cal. 3d at 821. Unlike in *Graham*, the Arbitration Agreement at issue here does not designate a biased arbitrator. *Compare* Arbitration Agreement at 9 ("The arbitration shall be conducted by a single arbitrator in accord with this arbitration provision and the AAA Rules[.]") *with Graham*, 28 Cal.3d at 826–27 (noting that the arbitration provision "designate[d] the union of one of the parties as the arbitrator of disputes arising out of employment"). Moreover, by incorporating the AAA rules, the Arbitration Agreement "establish[es] a system for selecting an arbitrator that is fair." *Swallow v. Toll Bros., Inc.*, No. C-08-02311 JCS, 2008 WL 4164773, at *5 (N.D. Cal. Sept. 8, 2008) (noting that the "AAA rules encourage[ ] the parties to agree on an arbitrator on the AAA's list of arbitrators but also provide[ ] an alternative procedure if the parties cannot agree according to which parties submit objections and rankings that are used by the AAA to select the arbitrator."). Accordingly, *Graham* does not render the Arbitration Agreement unconscionable as plaintiff appears to suggest.

*Coll.*, 537 N.W.2d 14, 18 (S.D. 1995) (finding that a contract was not adhesive because it "was not presented in a 'take-it-or-leave-it' fashion") (citing *Rozenboom*, 358 N.W.2d at 245); *accord Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1212 (9th Cir. 2016) ("An arbitration agreement is not adhesive if there is an opportunity to opt out of it.") (citing *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199 (9th Cir. 2002)). Therefore, the arbitration agreement is not procedurally unconscionable.[12]

### 2. Bargained-for Exchange

Under South Dakota law, contract formation requires "a meeting of the minds or mutual assent on all essential terms." *Am. Prairie Constr. Co. v. Hoich*, 594 F.3d 1015, 1023 (8th Cir. 2010) (quoting *Jacobson v. Gulbransen*, 623 N.W.2d 84, 90 (S.D. 2001)). "The existence of mutual consent is determined by considering the parties' words and actions." *Hoich*, 594 F.3d at 1023 (quoting *Vander Heide v. Boke Ranch, Inc.*, 736 N.W.2d 824, 832 (S.D. 2007)). Here, plaintiff assented to Citibank's binding Arbitration Agreement when she accepted and began using her credit card. *See* S.D. Codified Laws § 54-11-9. Crucially, plaintiff does not dispute that she received the Credit Card Agreement with Citibank, that the contract contained a binding arbitration agreement, and that she continued using her credit card for at least 30 days without cancelling her account.[13] Therefore, the Court finds that plaintiff assented to the binding Arbitration Agreement contained within her contract with Citibank.[14]

---

[12] Indeed, plaintiff concedes that courts typically "decline[] to find arbitration procedurally unconscionable where an opt-out clause was included in the arbitration agreement." Reply at 4–5.

[13] *See Cayanan*, 928 F. Supp. 2d at 1199 (holding, under South Dakota law, that plaintiff "assented to arbitration when she continued to use her" Citibank credit card); *Guerrero v. Equifax Credit Info. Servs., Inc.*, No. CV 11-6555 PSG (PLAx), 2012 WL 7683512, at *6 (C.D. Cal. Feb. 24, 2012) ("Applying South Dakota law, the Court finds that Plaintiff entered into the arbitration agreement when he was mailed the 2001 Change–in–Terms, failed to take advantage of the optout provision, and continued to use the card."); *Ackerberg*, 898 F. Supp. 2d at 1776 (noting that "continued use or failure to opt out of a card account after the issuer provides a change in terms, including an arbitration agreement, evidences the cardholder's acceptance of those terms").

[14] Plaintiff's argument that the Arbitration Agreement is unenforceable because "there was no new consideration for the [Arbitration Agreement] of the contract" is unavailing. Opp. at 7; *see also id*. at 3. Plaintiff cites no authority in support thereof, and the Court finds none which suggests that a card holder must provide additional consideration for a specific provision in a credit card contract. Under South Dakota law, valid consideration is defined as follows: "Any benefit . . . agreed to be conferred upon the promiser . . . or any prejudice . . . agreed to be suffered

11

### *3. Constitutionality of Enforcement*

Plaintiff argues that Citibank's arbitration agreement violates her Seventh Amendment right to a jury trial and that the arbitration fees violate her due process right to an accessible arbitral forum. (Opp. at 10–11; MTC Objection at 9.) Plaintiff does not persuade.

As to the former, in general "a party has 'an absolute right to a jury trial unless a jury has been waived.'" *Kam-Ko Bio-Pharm Trading Co. Ltd-Australasia v. Mayne Pharma (USA) Inc.*, 560 F.3d 935, 942 (9th Cir. 2009) (citing *Pac. Indem. Co. v. McDonald*, 107 F.2d 446, 448 (9th Cir. 1939)). "The right to a jury trial in federal court is governed by federal law and, under federal law, parties may contractually waive their right to a jury trial." *Applied Elastomerics, Inc. v. Z-Man Fishing Prods., Inc.*, 521 F. Supp. 2d 1031, 1044 (N.D. Cal. 2007) (citation omitted). "Federal law . . . permits such waivers as long as each party waived its rights knowingly and voluntarily." *In re Cty. of Orange*, 784 F.3d 520, 523, 529 n.4 (9th Cir. 2015) (noting that the FAA "permits pre-dispute jury trial waivers") (citing *Palmer v. Valdez*, 560 F.3d 965, 968 (9th Cir. 2009)). Here, plaintiff waived her right to a jury trial when she used Citibank's credit card under the terms of the Credit Card Agreement, which thereby equates to knowing assent to the terms of the same. Further, she did not opt out of the Arbitration Agreement. *See* Arbitration Agreement at 9; *see also, e.g., Kilgore v. Keybank, Nat'l Ass'n*, 673 F.3d 947, 964 (9th Cir. 2012) (enforcing an arbitration provision that clearly states that plaintiffs "would waive if they did not opt-out . . . the right to a jury trial"); *Devries v. Experian Info. Sols., Inc.*, No. 16-cv-02953-WHO, 2017 WL 733096, at *2 (N.D. Cal. Feb. 24, 2017) (upholding the validity of a similar arbitration

---

by such person . . . as an inducement to the promiser, is a good consideration for a promise." S.D. Codified Laws § 53-6-1. Plaintiff admits that she "bargain[ed] for a credit card in exchange to for [sic] an agreement to pay her bill on time." Opp. at 7. The Arbitration Agreement was not a "new condition" of the contract, but rather was included in the Credit Card Agreement she received and to which she subsequently agreed when she accepted and began using her credit card. *See* Bennett Decl. ¶ 6; Credit Card Agreement at 9–10. Accordingly, plaintiff's continued use of Citibank's credit card served as valid consideration for the Arbitration Agreement.

Moreover, the parties mutually agreed to forfeit their trial rights if either party elected to pursue arbitration, which serves as adequate alternative consideration. *See* Arbitration Agreement at 9; *McNamara v. Yellow Transp., Inc.* 570 F.3d 950, 956–57 (8th Cir. 2009) (finding that, under South Dakota law, "the parties' mutual agreement to relinquish trial rights serves as adequate alternative consideration").

12

agreement with a jury trial waiver).

Moreover, "[w]hen a party seeks to have an arbitration agreement declared invalid on the basis of prohibitive expense, that party bears the burden of proving that the contract is unenforceable." *Kam-Ko*, 560 F.3d at 940 (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000) (holding that the party resisting arbitration "bears the burden of showing the likelihood of incurring such costs")). Here, plaintiff asserts that "she cannot pay a AAA arbitration, due to the cost of arbitration." (MTC Objection at 9.) However, she has not shown any likelihood of incurring prohibitive costs. The Arbitration Agreement provides that "[Citibank] will pay [plaintiff's] share of the arbitration fee for an arbitration of Claims of $75,000 or less if they are unrelated to debt collection." (Arbitration Agreement at 9.) Moreover, "even if [p]laintiff were asserting a claim *above $75,000*," Citibank indicates that it is "willing to pay the arbitration fee." (Reply at 7 (emphasis supplied).) Therefore, plaintiff will not incur prohibitive expenses from pursuing her claims against Citibank through arbitration.

### D. Scope of Arbitration Agreement

Having found that an agreement to arbitrate exists, the Court's next determination is whether the agreement encompasses the dispute at issue. *Cox v. Ocean View Hotel Corp.*, 533 F.3 1114, 1119 (9th Cir. 2008). Generally, an "order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT&T Techs., Inc.*, 475 U.S. at 650 (citation omitted). If the arbitration agreement is broad and lacks "any express provision excluding a particular grievance from arbitration," then "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Id.* (citation omitted). Moreover, the party "resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree*, 531 U.S. at 91–92.

Here, the Arbitration Agreement is broad and extends to "any claim, dispute or controversy between [plaintiff] and [Citibank] arising out of or related to [plaintiff's] Account, a previous related Account, or [plaintiff's and Citibank's] relationship." (Arbitration Agreement at 9.) Apart from a few narrow exceptions, the agreement plainly states that "all Claims are subject to

13

arbitration, no matter what legal theory they're based on or what remedy . . . they seek[.]" (*Id.*) Plaintiff's cursory "objection" to Citibank's assertion that plaintiff's claims fall within the scope of the Arbitration Agreement fails to meet her burden to show that her claims are unsuitable for arbitration.[15] That said, the Court also notes that within the limits of "small claims," the Arbitration Agreement provides that those claims "are not subject to arbitration." (*Id.*) Accordingly, the Court finds that the Arbitration Agreement encompasses plaintiff's claims against Citibank as currently pled against Citibank.

## IV. CONCLUSION

For the foregoing reasons, Citibank's motion to compel arbitration is **GRANTED** as to all of the causes of action asserted against it, namely numbers (1), (3), (4), (6), (7), (9)–(12), and (14). (*See supra* at 1 n.1.) All such claims are **DISMISSED WITHOUT PREJUDICE**. Pursuant to the Arbitration Agreement and Citibank's Reply, (*see* Reply at 7), Citibank is **ORDERED** to pay plaintiff's arbitration fee. In the exercise of the Court's discretion to control its docket, this action is **STAYED** *as to Citibank only*, pending completion of the arbitration or notice that plaintiff has filed a claim in small claims court.

The Court **SETS** this matter for a compliance hearing on **Friday, June 7, 2019** on the Court's **9:01 a.m.** calendar in the Federal Courthouse, 1301 Clay Street, Oakland, California in Courtroom 1. No later than **Friday, May 31, 2019**, plaintiff and Citibank shall file a **JOINT STATEMENT**, not to exceed **three (3) pages**, apprising the Court of the status of the dispute. If filed, the compliance hearing will be taken off calendar, and no appearance will be required.

Plaintiff is **ORDERED** to file a notice with the Court which includes the proper service address for SFG*Proschoicebeauty and MTZ*Carenature.[16] If plaintiff is unable to obtain information as to the two defendants' proper service address, then she shall file a declaration in which she describes the efforts made to comply with this Order. Once the Court is in receipt of

---

[15] *See* MTC Objection at 7 (providing in a heading that "Plaintiff objects to defendant's third argument stating plaintiff [sic] claim falls squarely within the cope [sic] of the arbitration agreement").

[16] The record indicates that plaintiff's original summons provided an incorrect address for both defendants. *See supra* at 3.

14

the proper services addresses, the Clerk shall issue summons, and the U.S. Marshal for the Northern District of California shall serve, without prepayment of fees, a copy of the complaint, any attachments, scheduling orders, and other documents specified by the Clerk upon defendants SFG*Proschoicebeauty and MTZ*Carenature.

The Court hereby **SETS** a separate compliance date. No later than **Friday, April 12, 2019**, plaintiff shall file either (i) the notice providing the proper service address for SFG*Proschoicebeauty and MTZ*Carenature, or (ii) the aforementioned declaration. The filing shall not exceed **two (2) pages**.

The Court advises plaintiff that a Handbook for Pro Se Litigants, which contains helpful information about proceeding without an attorney, is available in the Clerk's office or through the Court's website, http://cand.uscourts.gov/pro-se.

The Court also advises plaintiff that additional assistance may be available by making an appointment with the Legal Help Center. **There is no fee for this service**. To make an appointment with the Legal Help Center in San Francisco, plaintiff may visit the San Francisco Courthouse, located at 450 Golden Gate Avenue, 15th Floor, Room 2796, San Francisco, California, 94102, or call 415/782-8982. To make an appointment with the Legal Help Center in Oakland, plaintiff may visit the Oakland Courthouse, located at 1301 Clay Street, 4th Floor, Room 470S, Oakland, California, 94612, or call 415/782-8982. The Help Center's website is available at http://www.cand.uscourts.gov/helpcentersf.

This Order terminates Docket Number 12.

**IT IS SO ORDERED.**

Dated: March 14, 2019

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**